JOSEPH A. GAUCHE

VS

SCHARFENSTEIN & SONS

# 7258

NO. 7258

CHARLES F. CLAIBORNE, JUDGE

April 1st. 1918.

CHARLES F. CLAIBORNE, JUDGE

This is a suit to recover of a former te d for injury done to leased premises.

The plaintiff alleged that he leased to the defendants the three lots forming the corner of Julia and S. Liberty Streets together with the improvements thereon for a period of twelve months ending September 30th. 1915; that the lease stipulated that "the said premises and appurtenances, including the locks, keys, and other fastenings, are delivered in good order, and the lessees obligate themselves to keep the same in like good order during the term of this lease XXX at their own expense XXX and at the end of the lease to return without further notice possession of said premises and appurtenances by actual delivery of the keys to the lessor, in like good order as received, the usual decay and wear and tear only excepted"; that said defendants at the end of their lease returned the property in a wretched condition; that in order to put the property back in the same condition in which it was when rented to defendants he spent $139.91 which he claimed from defendants.

In a supplemental petition plaintiff averred that the money expended by him consisted of the following items:

| | |
|---|---:|
| G. Pitard's Sons, merchandise | $ 19.10 |
| A. Palmisano, bricklayer | $ 2.50 |
| A. Palmisano, cleaning yards, office and sidewalk and carting away | $ 9.00 |
| Woodward Wight Co. merchandise | $ 4.65 |
| Berwick Lumber Co., | $ 1.00 |
| J. J. Clarke Co., | $ 4.55 |
| Jeff Brown Labor | $ 12.00 |
| C. M. Johnson, carpenter | $ 24.20 |
| C. M. Johnson, merchandise | $ .45 |
| Derve & Reynolds merchandise | $ .35 |
| Otto Knoop Lumber Company | $ 62.11 |
| | $ 139.91 |

After vainly excepting to plaintiff's petition for vagueness defendants answered that the property above mentioned had been leased to them four for five years; that they returned it

59

on September 30th. 1915 in the same condition in which it had been received by them, except the damage that was done to the buildings and fences by the hurricane of September the 29th. 1915; that the plaintiff expended money for making entirely new fences and other improvements necessary to rent the property.

Plaintiff had judgment for $125.00. The Judge of the District Court, in his reasons for judgment says:

"The itemized bill attached to plaintiff's petition discloses the nature of the expenses and are sufficiently established. These items however show that the work in question renews the property without an allowance for "usual wear and tear" and which therefore exceeds the value that plaintiff is entitled to claim."

The defendants have appealed.

The obligations assumed by the defendants in their lease were only an affirmance of the duties imposed upon them by the law. C.C. 2710 (2680) to 2722 (2692). They were to enjoy the leased premises as good administrators, according to the use for which they were intended by the lease; they were presumed to have received the premises in good order and they were obligated to return them in the same state; they were to make at their expense all repairs rendered necessary by their fault or negligence, not including those which unforeseen events or natural decay and wear and tear or unavoidable accidents might occasion. In other words they were to be liable for the abuse and not for the use of the property.

Plaintiff testified that he originally leased the premises to the defendant four or five years ago; and renewed the lease from year to year; that the property was in good condition; that it was always used as a coal and wood yard/that it was returned to him on September 30th. the day after the storm; that he visited the property on the next day October 1st., that it was in an awful condition; the glasses were broken and the doors and some of the sash frames in the inside were out; that he spent $139.91 to repair it; Pitard's bill represented locks, keys, glass and hinges; Woodward Wight Company was for paints for the inside of the building; Clark was for brick, sand, and cement

to repair the banquette; but he was unable to say how many locks, glasses, or hinges Pitard's bills represented or how much each cost, and where they were put; he was unable to state where the labor of Brown or Johnson was applied, and how long it was occupied, or where the lumber of Otto Knoop was used-; the bill of DeVie & Reynolds was either for paint or putty.

As we gather it, plaintiff's claim is for locks, keys and hinges. The testimony is that there were two new locks put on, and about sixteen new hinges; but there is no proof of what any of them cost. Some glasses were missing and replaced; but how many does not appear.

It does not follow that because the materials mentioned in plaintiff's petition were used in his building that defendant must pay for them. It must be shown that they were for some repairs for which they were liable.

New fences were erected by plaintiff along Liberty Street and Julia Street and in the rear of the lots. But we are not satisfied that the necessity for these new fences was caused by defendant's fault. Plaintiff's theory is that they were rotted and caused to bulge out by defendant's heaping wood and coal against them. Wood is usually piled along a fence and not against it. This is what the defendants say they did. There is not sufficient evidence to contradict them. Such a practice was not calculated to rot a fence. But if it was, it was such a use of the property as was well known to plaintiff for several years, and such as was contemplated and intended by the lease.

Besides the proximity of the wood to the fence was only transient, as the wood came into, and went out of, the yard as the wood was bought and sold. The same remarks apply to the weatherboards on the side of the house. Nor is there satisfactory evidence that coal was heaped against any particular part of the fence, and that it was rotted by reason thereof. The defendants testify that the large lumps of coal were put back of the pile so as to form a bulwark to support the coal and leave a space between it and the fence.

There is no evidence concerning the condition of the fences when defendants first leased the property; but the proof

is that the improvements are 25 or 30 years old, and the presumption that the fences date back to that period has not been rebutted,

The only items established to our satisfaction are the following:

| | | |
|---|---|---|
| Palmisano brick-work | $ | 2.50 |
| Cleaning up yard | $ | 9.00 |
| Berwick Lumber Company | $ | 1.00 |
| J. J. Clarke Company | $ | 4.55 |
| Repairs to side-walk | $ | 7.50 |
| *Locks, Hinges, Lights and Labor (Bay)* | *~~$ 15.00~~* | *15.00* |
| *Total* | | *$ 39.55* |

It is therefore ordered that the judgment of the District Court in favor of plaintiff be reduced from One Hundred and twenty-five Dollars to ~~Twenty-four~~ *Thirty-nine* 55/100 Dollars, and that the balance of his claim be rejected; that defendants pay the costs of the District Court and the plaintiff pay the costs of Appeal.

April 1st. 1918.